Peebles's Estate.    Peebles's Appeal.

[Marked to be reported.]

*Widow's exemption—Election to take under will.*

A widow has a right to claim the exemption of three hundred dollars out of her husband's estate, although her husband by his will has directed that the legacy bequeathed to her shall be in lieu of dower and exemption, and the widow has elected to take under the will.

Argued Oct. 4, 1893. Appeal, No. 232, Oct. T., 1893, by Martha Peebles, widow, from decree of O. C. Venango Co., Jan. T., 1890, No. 24, on petition for widow's exemption, in estate of W. O. Peebles, deceased. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Petition for widow's exemption.

From the petition, answer and proofs it appeared that William O. Peebles died on Feb. 9, 1889, leaving a will of which he appointed John M. Peebles, his son, executor. The first clause of the will was as follows: "First. I give and bequeath to my wife, Martha Peebles, one thousand dollars, which shall be in lieu of her dower in my estate and also in lieu of the three hundred dollars she would be entitled to under the widow's exemption law, and in lieu of any and every other interest she might have in my estate after my decease."

On March 29, 1890, the widow presented a petition in which she averred that on Feb. 22, 1889, she was obliged to leave the homestead of decedent on account of ill treatment by her stepsons; that on March 18, 1889, the executor filed an appraisement of the personal estate of the decedent without no-

tice to petitioner; that on or about April 10, 1889, petitioner was informed that said executor had taken all of said property at the appraised value and had appropriated the same to his own use intending to account for it at the appraised value, and petitioner then notified the executor that she demanded three hundred dollars to be paid to her under the widow's exemption law; that said executor then refused and has ever since refused to pay said three hundred dollars or set apart to her property to that amount and now refuses so to do.

The executor filed an answer in which he denied that the widow was obliged to leave the homestead of the decedent on account of ill treatment.

He further averred as follows : " On the contrary, I aver that on the day of the funeral of said decedent, her husband, she asked me what she ' had better do,' whereupon, understanding her question to relate to her rights as the widow of the said decedent, I replied : ' There's no hurry about it, you have a year to decide.' Within ten days after this conversation she came to my house and asked me to go to her residence and assist in dividing the household goods, she claiming that part of them belonged to her, and also my advice again as to what she ' should do,' and whether she had better take under the will of her husband or claim her rights as widow. I again told her that there was no hurry about that; that she had a year to make up her mind, but gave it as my opinion that she had better take under the will. She said she would not wait but would take the thousand dollars given her by the will and take her things and leave the place; that she would not stay there with the boys. I then went with her to the late residence of her husband and assisted in setting apart and delivering to her goods which she claimed to be hers, and I then took the said goods for her and at her request to Titusville, where her father resided, and also removed her to her said father. Relying upon her election so expressed to me to take under her husband's will, I proceeded to have the personal property of the testator appraised and then delivered the same over to the children of the testator to whom it was bequeathed, and proceeded with the settlement of the estate of the testator upon the basis of her said election, and have been ready and willing as testamentary guardian of John S. and Gaylord O. Peebles, and have

offered to pay to her the sum of money bequeathed to her by the said testator.

" 3. I am advised by counsel and believe that the said Martha having elected to take under the said will is not entitled to demand and receive any other or further sum of or out of the estate of the said decedent. And for that reason I have refused to pay her any money except in accordance with her said election.

" 4. No money has ever come into my hands as executor of the said William O. Peebles out of which I could have complied with the demand of the said Martha, and the only demand she has ever made upon me was for money and not for goods or land. She never asked to have any goods set apart to her except such as she claimed to have owned at the time of her marriage, and these were set apart to her."

After argument the court filed the following opinion discharging a rule to show cause why the exemption should not be paid:

" The answer of the executor under oath denies all the equities relied upon in support of the rule, and the testimony taken in support thereof is that of the widow alone, so far as any material facts are sought to be established. This then is oath against oath, and for this reason the rule must be discharged. I do this without reluctance as, if the widow can sustain the allegations made in support of the rule, she has an ample and complete remedy at law. And now, to wit, March 7, 1892, the rule is discharged."

*Error assigned* was decree as above.

*Roger Sherman, Samuel Grumbine* with him, for appellant. —Under the act of 1851, before the act of 1859, it was the right of the widow to claim, and the duty of the administrator to pay, the $300 exemption out of the proceeds of property in money: Larrison's Ap., 36 Pa. 130.

The sum is payable to the widow, though a stepmother, and she is not a trustee for the children: Nevins's Ap., 47 Pa. 230. The widow was certainly entitled to have either property, as she might select, to the value of $300, or money to that

amount: McCann's Est., 9 Pa. C. C. R. 408; Compher v. Compher, 25 Pa. 31.

The statutory claim of the widow for exemption of $300 out of her husband's estate is such a meritorious and benevolent one that it ought not to be defeated by technicalities, or the astuteness of the court exercised to find reasons for its disallowance.

The court below intimates that the widow has a remedy at law, and so she has, as in the case of Compher v. Compher; but as said in that case, the remedy is to be had ordinarily in the orphans' court. The jurisdictions are concurrent, and the practice observed by petition to the orphans' court for an order upon the executor to set apart property or pay $300 has been followed and approved for many years: McCann's Est., 9 Pa. C. C. R. 408; King's Ap., 84 Pa. 345; Baskin's Ap., 38 Pa. 65; 3 Rhone's O. C. Practice, 30.

*C. Heydrick, Carl I. Heydrick* with him, for appellee.—The right of a widow to demand and receive three hundred dollars worth of property out of the estate of her deceased husband, to the exclusion of creditors, heirs, devisees and legatees, does not vest immediately and unconditionally upon his death, but only when she has elected to exercise it: Kerns' Ap., 120 Pa. 523. It is a right which may be waived: Davis's Ap., 34 Pa. 256. It may be waived by neglect to make demand within a reasonable time: Burk v. Gleason, 46 Pa. 297; by neglect to make the demand before the executor has incurred expenses in proceeding to effect a sale: Davis's Ap., 34 Pa. 256; by neglect to make demand before the expenses of a full administration have been incurred: Baskin's Ap., 38 Pa. 65.

Being a right that may be waived, by mere supineness of the widow, and that to her disadvantage and to the corresponding advantage of other persons interested in the estate, she may certainly waive it by a positive act resulting in advantage to herself and corresponding disadvantage to the other parties in interest. This appellant has done.

In Compher v. Compher, 25 Pa. 31, relied upon by appellant, there was no disappointment of the will nor was the bequest made to the widow, as in this case, expressly in lieu of her rights under the statutes.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 23, 1893:

Our exemption act authorizes the widow of any decedent, dying in this commonwealth, testate or intestate, to retain real or personal property, belonging to said estate, to the value of three hundred dollars, and declares it shall be the duty of the executor or administrator of such decedent to have such property appraised in the same manner as is provided in the act of 1849. The only restriction contained in the act is that the widow's claim "shall not affect or impair any lien for purchase money of such real estate." In addition to that, it has been held that she cannot claim land or the proceeds thereof to the prejudice of her husband's mortgagee. This construction necessarily results from the nature of the mortgage contract. While mortgages are commonly spoken of as mere securities for the payment of money, they are in fact defeasible conveyances or formal pledges of the land, and payment of the debt thus secured may be enforced by ejectment or foreclosure of the mortgage: Kauffman's Ap., 112 Pa. 645; Gangwere's Ap., 36 Pa. 466; Nerpel's Ap., 91 Pa. 334; Wells v. Van Dyke, 109 Pa. 330. Subject to these restrictions, the widow may assert her rights, under the act, against the creditors of her husband's estate, his devisees, legatees, or distributees under the intestate law, whether the estate be solvent or insolvent, provided she has not by her own act forfeited or waived her right to do so. The statutory exemption in her favor may, therefore, be regarded as a preferred claim or gift of the law, prompted by considerations of public policy. As was said in Compher v. Compher, 25 Pa. 31, 34: "So much of the estate is withdrawn from the general course of administration and specifically appropriated by law to the use of the 'widow and family;' and this is so, whether the widow elects to take under the will, if there be one, or prefers her statutory rights in the distribution of the estate."

From the very nature and purpose of the preferred right given to the widow and attaching immediately upon her husband's death, without regard to his solvency or insolvency, testacy or intestacy, it may be fairly inferred that he is powerless by any such testamentary provision as was made in this case to prevent her from freely exercising the right vested in her by the law itself.

In this case, appellant avers that on or about April 10, 1889, less than three months after her husband's death, she "notified said executor that she demanded three hundred dollars to be paid to her under the widow's exemption law ; that said executor then refused and has ever since refused to pay her said three hundred dollars or set apart to her property to that amount, and now refuses to do so." This averment of demand and refusal is not denied by the executor in his answer. On the contrary, he impliedly admits that appellant did claim the benefit of the exemption, and undertakes to justify his refusal thereof. After averring, in substance, that she informed him of her election to take under the will, he says : "Relying upon her election, so expressed to me, to take under her husband's will, I proceeded to have the personal property of the testator appraised," etc. And in the third paragraph of his answer he says : "I am advised by counsel and believe that the said Martha having elected to take under said will, is not entitled to demand and receive any other or further sum of or out of the estate of said decedent. And for that reason I have refused to pay her any money except in accordance with her said election." The only ground of his refusal is thus distinctly stated, and it presents the only question in the case that is worthy of consideration. The ground, upon which the learned judge of the orphans' court bases his order discharging the rule, is not only untenable, but it is not supported by the proofs in the case. As we have just seen, the answer does not deny appellant's demand,—the most material fact in the case. It does deny some of the averments in the petition, in regard to domestic difficulties between the widow and her stepchildren, etc., but these are of little, if any, importance. And, even as to some of these, appellant is sustained by the testimony of her father. The learned judge was therefore mistaken in saying : "This then is oath against oath, and for this reason the rule must be discharged."

The executor having admitted that he ignored appellant's claim and demand under the exemption law, because she elected to take under the will of her husband, the only question is whether he was justified in so doing. For reasons above suggested, we think he was not. Her election to take under the will did not in any manner interfere with her claim under the

exemption law.   There was therefore error in discharging the rule.

The order discharging said rule is reversed, with costs to be paid by the executor out of the funds of the estate ; and it is now adjudged and decreed that said rule be reinstated and the cause be proceeded in to final order or decree in accordance with the foregoing opinion.